IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRUCE X. COOPER, | No. 4:21-CV-01793 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| JOHN WETZEL, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

APRIL 28, 2022

Plaintiff Bruce X. Cooper filed the instant *pro se* Section 1983[1] action, claiming constitutional violations and state-law negligence with respect to COVID-19 pandemic management at his prison. Defendants have moved to dismiss the complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will grant in part and deny in part Defendants' motion to dismiss.

I.  BACKGROUND

During all relevant times, Cooper has been incarcerated at the State Correctional Institution in Dallas, Pennsylvania (SCI Dallas).[2] At the time he filed his complaint, Cooper described himself as a 65-year-old "elderly male" who has

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2] Doc. 11 ¶ 3.

been in state custody for over 30 years.[3]  He alleges that he has preexisting hypertension, heart disease, pulmonary disease, and "a host" of other serious medical conditions.[4]

Cooper avers that, due to gross mismanagement, facility disrepair and lack of ventilation, absence of oversight, insubordination of rank-and-file correctional officers, and failure to enforce Pennsylvania Department of Corrections (DOC) policy, the COVID-19 virus[5] spread unchecked throughout SCI Dallas and he was eventually infected.[6]  He asserts that, as a result of his infection, he suffered serious side effects including deep vein thrombosis (DVT) and long-term respiratory problems, as well as mental and emotional injuries.[7]  He names as defendants three DOC officials: John Wetzel (then-Secretary of Corrections), Kevin Ransom (Superintendent of SCI Dallas), and Erin Brown (Director of the Office of Population Management).[8]  Cooper claims that these officials had full knowledge

---

[3]   *Id.* ¶ 7.
[4]   *Id.*
[5]   The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2."  *Naming the Coronavirus Disease (COVID-19) and the Virus that Causes It*, WORLD HEALTH ORG., https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it (last visited Apr. 25, 2022).  The Court refers to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."
[6]   *See generally* Doc. 11 ¶¶ 8-74.
[7]   *Id.* ¶¶ 60, 75, 77.
[8]   *Id.* ¶¶ 4-6.

of the conditions at SCI Dallas and either took no action or instituted practices that exacerbated the pandemic's effects at the facility.[9]

In September 2021, Cooper filed a lengthy, detailed complaint in the Court of Common Pleas of Luzerne County, Pennsylvania.[10] After being served, Defendants removed the case to this Court.[11] In his complaint, Cooper asserts a Section 1983 Eighth Amendment claim against all Defendants alleging unconstitutional conditions of confinement.[12] He also sets forth state-law negligence claims against Wetzel and Ransom.[13] Defendants move to dismiss Cooper's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[14] That motion is fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[15] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the

---

[9] *Id.* ¶¶ 39, 46, 50-51, 55, 68-73.
[10] *See* Doc. 1-1 at 1.
[11] Doc. 1 at 1.
[12] Doc. 11 ¶¶ 80-84. Cooper sets out two counts under an Eighth Amendment umbrella, but these purportedly separate counts are really a single conditions-of-confinement claim involving the alleged conditions at SCI Dallas to which Cooper was subjected during the height of the COVID-19 pandemic. *See id.*
[13] *Id.* ¶¶ 85-89.
[14] Doc. 4.
[15] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver,* 82 F.3d 63, 66 (3d Cir. 1996).

light most favorable to the plaintiff.[16] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[17]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[18] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[19] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[20] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[21] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[22]

Because Cooper proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent

---

[16] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[17] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[18] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[19] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[20] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[21] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[22] *Iqbal*, 556 U.S. at 681.

standards than formal pleadings drafted by lawyers[.]"[23] This is particularly true when the *pro se* litigant, like Cooper, is incarcerated.[24]

## III. DISCUSSION

Defendants argue that Cooper's allegations do not state a cognizable Eighth Amendment claim. They also posit that Brown should be dismissed because the allegations concerning prison transfers do not, as a matter of law, set forth a constitutional violation. They further contend that, as to the negligence allegations against Wetzel and Ransom, such claims are barred by sovereign immunity. The Court will address the sufficiency of Cooper's claims in turn.

### A. Eighth Amendment Conditions of Confinement

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort."[25] Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or "inhumane treatment," such as deprivation of "identifiable human need[s]" like "food, warmth, or exercise."[26] To prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must show both objective and subjective elements.[27] Objectively, the prisoner must demonstrate that "the prison official deprived the

---

[23] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[24] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[25] *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).
[26] *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).
[27] *See id.*

prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation.[28]  Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[29]  Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[30]

Defendants claim that Cooper has not stated a plausible conditions-of-confinement claim.  They argue that, in light of the measures the DOC has taken to address the COVID-19 pandemic,[31] Cooper's allegations are insufficient as a matter of law to state an Eighth Amendment violation.  Taking Cooper's allegations as true, as required at the Rule 12(b)(6) stage, the Court cannot agree.

The gravamen of Cooper's complaint is that Wetzel and Ransom knew of the unsafe conditions, policy violations, and deliberate insubordination by correctional staff at SCI Dallas and took no action.  Cooper alleges, for example, that during the height of the COVID-19 Delta variant spread, SCI Dallas correctional officers and staff were intentionally refusing to wear masks, ignoring social distancing protocol, coming to work when sick or after being in contact with infected individuals instead of quarantining, carelessly intermingling with other

---

[28] *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).
[29] *Id.* (citing *Farmer*, 511 U.S. at 834).
[30] *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).
[31] *See* Doc. 8 at 7-8 (listing DOC mitigation measures).

staff and prisoners, and refusing to undergo COVID-19 testing. Cooper avers that these actions went unpunished and uncorrected, causing his infection as well as widespread infection of other inmates at SCI Dallas and leading to severe sickness and even inmate deaths.

Cooper additionally alleges that Ransom toured SCI Dallas on a regular basis, held conversations with inmates, and was fully aware of the complained-of conditions but "in most cases did absolutely nothing."[32] According to Cooper, Ransom failed to implement DOC directives regarding COVID-19 pandemic protocol, knew that staff were reporting to work with COVID-19 infections, and also knew that those employees were commingling with inmates, causing infections and deaths. As to Wetzel, Cooper asserts that Wetzel was aware of the conditions at SCI Dallas but failed to enforce his department's own directives. Cooper claims that he and other inmates wrote letters to Wetzel informing him of the unsafe conditions and compliance failures, but that Wetzel failed to act.

The Court finds that such detailed allegations, taken as true, implicate potential violations of the Eighth Amendment. It is well settled that conditions of confinement that may pose a risk of serious illness or death may not be ignored by prison officials.[33] Almost three decades ago, the Supreme Court of the United States admonished that prison authorities cannot "ignore a condition of

---

[32] Doc. 11 ¶ 69.
[33] *Helling v. McKinney*, 509 U.S. 25, 33 (1993).

confinement that is sure or very likely to cause serious illness and needless suffering[.]"³⁴ This includes commingling of inmates with "infectious maladies" or "serious contagious diseases."³⁵

To be sure, the COVID-19 pandemic presents substantial challenges to the DOC and facilities like SCI Dallas, where space constraints are unavoidable and social distancing is not always possible. But Cooper's complaint goes beyond basic allegations (like lack of social distancing or inadequate ventilation) that have been found to be insufficient as a matter of law by other courts.³⁶ In particular, Cooper alleges that Wetzel and Ransom had direct knowledge of the above-referenced unsafe conditions and failed to take any action whatsoever.

In light of the obvious and substantial health risk that the COVID-19 virus presents to vulnerable people like Cooper, who are over age 65 and have multiple preexisting medical conditions,³⁷ deliberately failing to implement or enforce DOC directives specifically intended to address the serious health and safety risks presented by the virus may violate the Eighth Amendment. Indeed, to hold otherwise would have the perverse effect of insulating prison officials who

---

34   *Id.*
35   *Id.* at 33, 34 (citing *Hutto v. Finney*, 437 U.S. 678, 682 (1978); *Gates v. Collier*, 502 F.2d 1291 (5th Cir. 1974)).
36   *See e.g.*, *Ali v. Kauffman*, No. 1:20-CV-1462, 2021 WL 3929741, at *4-5 (M.D. Pa. Sept. 2, 2021); *Wilkins v. Wolf*, 1:20-CV-2450, 2021 WL 2376678, at *5, 6 (M.D. Pa. June 10, 2021); *Bevins v. Kauffman*, No. 1:20-CV-2012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1, 2021).
37   See *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 22, 2022).

8

knowingly and deliberately flout DOC policies and directives put in place to protect the health and safety of inmates and correctional staff.

As to defendant Brown, Cooper alleges that she continued to transfer prisoners through bus and van transportation despite knowing of the risks of the COVID-19 virus and that it was an airborne pathogen. He claims that she was aware of "the danger of transporting prisoners in the mi[d]st of this pandemic," but she "packed buses with inmates" and failed to "slow, halt, or redesign" inmate transfers.[38] The Court finds that such allegations regarding the basic transfer of inmates during the pandemic do not plausibly state an Eighth Amendment violation. Specifically, while they might suggest negligence, they do not implicate deliberate indifference to prisoner health or safety. Moreover, Cooper has not plausibly alleged a connection between Brown's purported actions and his harm.[39]

In sum, the Court finds that Cooper has sufficiently alleged facts that, if true, could establish an Eighth Amendment conditions-of-confinement claim with respect to Wetzel and Ransom. He has not done so with respect to Brown. The

---

[38] Doc. 11 ¶ 72.

[39] The Court notes that, at several places in the complaint, Cooper appears to be attempting to make claims on behalf of other SCI Dallas prisoners. *See, e.g.*, Doc. 11 ¶¶ 16, 24, 33, 56. The Court rejects these attempts for several reasons. First, Cooper is the only named plaintiff and the only individual who signed the complaint. *See id.* ¶ 3; *id.* at p. 19. Second, Cooper is not an attorney and is acting *pro se*, and thus he cannot adequately represent a class of prisoner plaintiffs. "[I]t is well settled that pro se inmates are not permitted to represent a class of litigants." *Mincy v. Deparlos*, 497 F. App'x 234, 238 n.3 (3d Cir. 2012) (nonprecedential) (citing *Hagan v. Rogers*, 570 F.3d 145, 159 (3d Cir. 2009); *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000)).

Court will therefore dismiss Brown as a defendant, as she is named only in the constitutional tort count.

### B. State-Law Negligence[40]

Defendants contend that state statutory sovereign immunity bars Cooper's negligence claims against Wetzel and Ransom. They argue that these Defendants were acting within the scope of their employment when the alleged events took place, no exception to immunity applies, and thus Wetzel and Ransom are immune from Cooper's negligence claims. Cooper does not provide any response to Defendants' assertion of statutory sovereign immunity.

Commonwealth parties acting within the scope of their employment generally are immune from suit except when immunity is explicitly waived.[41] Pennsylvania's General Assembly has carved out certain limited exceptions from its grant of sovereign immunity to Commonwealth actors.[42] Section 8522(b) of Title 42 of the Pennsylvania Consolidated Statutes provides ten narrow categories where

---

[40] Cooper asserts that he is bringing state-law claims against Wetzel and Ransom in their "official capacity" rather than their individual capacity. Doc. 11 ¶¶ 4-5. This distinction is immaterial for state-law tort claims. Pennsylvania's sovereign immunity statute places "the Commonwealth" and "its officials and employees acting within the scope of their duties" on equal footing for immunity purposes, *see* 1 PA. CONS. STAT. § 2310, and an "official capacity" claim against a Commonwealth official is akin to suing the Commonwealth itself. *See Brautigam v. Fraley*, 684 F. Supp. 2d 589, 593 (M.D. Pa. 2010) (explaining that statutory sovereign immunity under Section 2310 applies to Commonwealth employees in their official and individual capacities provided that they are operating within the scope of their duties).

[41] *See* 1 PA. CONS. STAT. § 2310; 42 PA. CONS. STAT. §§ 8521, 8522(a).

[42] *See generally* 42 PA. CONS. STAT. §§ 8521, 8522.

10

the state has waived its sovereign immunity for claims involving negligent conduct by Commonwealth parties.[43]

The only possible immunity exception that could apply to Cooper's claims involving physical deterioration, poor ventilation, and nonworking showerheads would be the "real property" exception, 42 PA. CONS. STAT. § 8522(b)(4).  Upon closer review, however, this category is not applicable to Cooper's negligence claims.  Cooper's alleged injuries did not result from defects in the building, land, or fixtures of SCI Dallas; rather, they were caused by the COVID-19 virus.  It is not enough that the poor ventilation or broken showerheads purportedly facilitated the spread of the virus.[44]  Instead, "the dangerous condition must derive, originate from, or have as its source the Commonwealth realty,"[45] and the dangerous condition or "defect" must cause the injury.[46]  When construing this exception to immunity strictly, as required,[47] the Court finds that it does not apply to Cooper's negligence claims.  None of the other exceptions apply either, so the claims are barred by state statutory sovereign immunity.

---

[43]   *See id.* § 8522(a), (b).
[44]   *See Hall v. Sw. Pa. Water Auth.*, 87 A.3d 998, 1001 (Pa. Commw. Ct. 2014).
[45]   *Id.* at 1000 (quoting *Snyder v. Harmon*, 562 A.2d 307, 311 (Pa. 1989)).
[46]   *Snyder*, 562 A.2d at 311-12.
[47]   *See id.* at 311 (citations omitted).

### C. Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile."[48] Because Cooper's negligence claims are barred by statutory sovereign immunity and no exception applies, granting leave to amend those claims would be futile. Amendment would likewise be futile for Cooper's Section 1983 claim against Brown, as the complaint's allegations do not state an Eighth Amendment violation or implicate a connection to Cooper's health and safety. Accordingly, this case will proceed on Cooper's Section 1983 conditions-of-confinement claim against Wetzel and Ransom only.

## IV. CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' motion to dismiss (Doc. 4) pursuant to Federal Rule of Civil Procedure 12(b)(6). An appropriate Order follows.

                                         BY THE COURT:

                                         *s/ Matthew W. Brann*
                                         Matthew W. Brann
                                         Chief United States District Judge

---

[48] *Grayson*, 293 F.3d at 114.