IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRUCE X. COOPER, | No. 4:21-CV-01793 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| JOHN WETZEL, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

FEBRUARY 20, 2024

Plaintiff Bruce X. Cooper filed the instant *pro se* Section 1983[1] action, claiming constitutional violations by high-level officials with respect to COVID-19 pandemic management at his prison, the State Correctional Institution in Dallas, Pennsylvania (SCI Dallas). The lone remaining Defendant—the Superintendent of SCI Dallas—now moves for summary judgment on Cooper's Eighth Amendment conditions-of-confinement claim. For the following reasons, the Court will grant Defendant's Rule 56 motion.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I. **FACTUAL BACKGROUND**[2]

During all times relevant to this lawsuit, Cooper was incarcerated in single-cell status at SCI Dallas.[3] At the time he filed his lawsuit in September 2021, Cooper described himself as a 65-year-old "elderly male" who has been in state custody for over 30 years.[4] He asserted that he has preexisting hypertension, heart disease, pulmonary disease, and "a host" of other serious medical conditions.[5]

In his complaint, Cooper alleged that, due to gross mismanagement, facility disrepair and lack of ventilation, absence of oversight, insubordination of rank-and-file correctional officers, and failure to enforce Pennsylvania Department of

---

[2] Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* "Statements of material facts in support of, or in opposition to, a motion [for summary judgment] shall include references to the parts of the record that support the statements." *Id.* Defendant Kevin Ransom filed a properly supported statement of material facts. *See* Doc. 78. Cooper responded to this statement. *See* Doc. 83. Many of Cooper's responses, however, are not supported by citations to the record and instead contain nothing more than argument or opinion. This directly contravenes Local Rule 56.1. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (explaining that Local Rule 56.1 "is essential to the Court's resolution of a summary judgment motion due to its role in organizing the evidence, identifying undisputed facts*, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence.*" (emphasis supplied) (internal quotation marks and citations omitted)). Ransom's statements of material facts, therefore, are deemed admitted unless properly countered by Cooper with citations to competent record evidence. *See* LOCAL RULE OF COURT 56.1.

[3] Doc. 78 ¶ 1.
[4] Doc. 11 ¶ 7.
[5] *Id.*

Corrections (DOC) policy, the COVID-19 virus[6] spread unchecked throughout SCI Dallas and he was eventually infected.[7] He claimed that, as a result of his infection, he suffered serious side effects including deep vein thrombosis (DVT) and long-term respiratory problems, as well as mental and emotional injuries.[8] He named as defendants three DOC officials: John Wetzel (then-Secretary of Corrections for the DOC), Kevin Ransom (Superintendent of SCI Dallas), and Erin Brown (Director of the Office of Population Management for the DOC).[9] Cooper maintained that these officials had knowledge of the allegedly unconstitutional conditions at SCI Dallas and either took no action or instituted practices that exacerbated the pandemic's effects at the facility.[10]

Cooper initially filed his complaint in the Court of Common Pleas of Luzerne County, Pennsylvania.[11] After being served, Defendants removed the case to this Court.[12] Cooper asserted Section 1983 Eighth Amendment claims against

---

[6] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2." *Naming the Coronavirus Disease (COVID-19) and the Virus that Causes It*, WORLD HEALTH ORG., https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it (last visited Feb. 14, 2024). The Court refers to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."
[7] *See generally* Doc. 11 ¶¶ 8-74.
[8] *Id.* ¶¶ 60, 75, 77.
[9] *Id.* ¶¶ 4-6.
[10] *Id.* ¶¶ 39, 46, 50-51, 55, 68-73.
[11] *See* Doc. 1-1 at 1.
[12] Doc. 1.

all Defendants, alleging unconstitutional conditions of confinement.[13] He also alleged state-law negligence by Wetzel and Ransom.[14]

Defendants moved to dismiss Cooper's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[15] The Court partially granted that motion.[16] The Court dismissed Cooper's Section 1983 claim against Brown because he had failed to plead an Eighth Amendment violation by Brown and because he had not plausibly alleged a connection between Brown's purported conduct and his harm.[17] The Court also dismissed the negligence claims against Wetzel and Ransom because those claims were barred by state statutory sovereign immunity.[18] Brown's Eighth Amendment conditions-of-confinement claims were permitted to proceed against Wetzel and Ransom.[19]

In November 2022, Wetzel and Ransom moved for summary judgment on the limited issue of failure to exhaust administrative remedies.[20] The Court granted in part and denied in part that motion.[21] The Court found that Cooper had failed to

---

[13] Doc. 11 ¶¶ 80-84. Cooper sets out two counts under an Eighth Amendment umbrella, but these purportedly separate counts are really a single conditions-of-confinement claim involving the alleged conditions at SCI Dallas to which Cooper claims he was subjected during the height of the COVID-19 pandemic. *See id.*
[14] *Id.* ¶¶ 85-89.
[15] Doc. 4.
[16] *See generally* Docs. 13, 14.
[17] *See* Doc. 13 at 9.
[18] *See id.* at 10-11.
[19] *See id.* at 6-9, 12.
[20] Doc. 49.
[21] *See generally* Docs. 75, 76.

administratively exhaust any claim against Wetzel because he had never identified or mentioned Wetzel or the "Secretary" of the DOC in his grievances, nor had he made any other reference to Wetzel that could reasonably be construed as identifying him as "an individual directly involved in the events," as required by DC-ADM 804.[22] Due to Cooper's procedural default of any conditions-of-confinement claim against Wetzel, summary judgment was granted in Wetzel's favor.[23]

The Court next determined that, as to Ransom, Cooper had properly exhausted some but not all of his conditions-of-confinement allegations. Specifically, the Court found that Cooper had raised and exhausted his claims concerning "reckless staff behavior with regard to COVID-19 protection protocols, the impossibility of social distancing, infected staff entering the prison and commingling with inmates, and lack of sanitizing supplies."[24] Those claims were asserted in grievance number 897195 and its appeals and had been "properly exhausted through final review with the SOIGA."[25]

Ransom, the lone remaining Defendant, now moves for summary judgment on the merits of Cooper's Eighth Amendment claim against him. That motion is fully briefed and ripe for disposition.

---

[22]  *See* Doc. 75 at 15-17 & nn.86-93.
[23]  *See id.* at 17; Doc. 76 ¶ 1(a).
[24]  Doc. 75 at 18.
[25]  *Id.*

## II. STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[26] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27] Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[28]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[29] The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[30] This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[31] A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury

---

[26] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[27] FED. R. CIV. P. 56(a).
[28] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (*quoting Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[30] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).
[31] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

could reasonably find for the [nonmovant]."[32] Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[33]

## III. DISCUSSION

Ransom's primary argument is that Cooper has failed to adduce *any* competent evidence that he acted with deliberate indifference toward Cooper's health or safety. Summary judgment, Ransom concludes, must be granted in his favor. The Court agrees.

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort."[34] Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or "inhumane treatment," such as deprivation of "identifiable human need[s]" like "food, clothing, shelter, medical care, and reasonable safety[.]"[35] To prevail on an Eighth Amendment conditions-of-confinement claim, a plaintiff must show both objective and subjective elements.[36]

Objectively, the prisoner must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred

---

[32] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[33] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).
[34] *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).
[35] *See Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted).
[36] *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015)

to as a "sufficiently serious" deprivation.[37]  Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety."[38]  Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm."[39]  Deliberate indifference is a high bar and requires a plaintiff to show that the defendant "recklessly disregard[ed] a substantial risk of serious harm."[40]

As noted above, Cooper exhausted the following alleged conditions at SCI Dallas that he believed increased his risk for COVID-19: one incident where a COVID-19-positive inmate (identified by Cooper as inmate "Wally") was improperly permitted by medical staff to return to the housing unit instead of being quarantined, low-level corrections officers failing to wear masks as required, the impossibility of social distancing, infected staff entering the prison and commingling with inmates, and lack of sanitizing supplies.[41]  Ransom does not argue that these alleged conditions would not qualify as a sufficiently serious

---

[37] *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson*, 501 U.S. at 297).
[38] *Id.* (citing *Farmer*, 511 U.S. at 834).
[39] *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).
[40] *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citation omitted).
[41] *See* Doc. 75 at 11-14, 18; Doc. 78 ¶¶ 34-35; Doc. 83 ¶¶ 34-35.  Cooper also complained that prison officials could not "guarantee against covid injury[.]" *See* Doc. 75 at 12 (quoting Doc. 50-2 at 3).  But the Eighth Amendment does not require prison officials to "guarantee" that a prisoner will not be infected during a pandemic, as this would be impossible.  Additionally, to the extent that Cooper raises a claim in his Rule 56 materials regarding prisoner "cohorts," (*see, e.g.*, Doc. 85 at 6; Doc. 86-1 ¶ 5), any such claim was procedurally defaulted at the administrative level and thus will not be discussed, (*see* Doc. 75 at 17-18).

deprivation due to the substantial risk they posed to Cooper's health. Rather, Ransom contends that there is no evidence that he acted with deliberate indifference to Cooper's health or safety.

It is undisputed that Ransom—the Superintendent of SCI Dallas—applied or implemented multiple policies and procedures at the prison to protect inmates and mitigate the spread of COVID-19. For example, in March 2020, the entire state prison system implemented a lockdown of its facilities and likewise suspended all in-person visitation.[42] The DOC, including SCI Dallas, also established a system of employee medical screening to attempt to prevent infected employees from entering state prisons.[43] Masking by staff was mandatory throughout the entire period underlying the events in Cooper's complaint, and mask-policy enforcement was conducted in accordance with the DOC's Human Resources and Labor Relations policy.[44] Moreover, the SCI Dallas COVID-19 Incident Action Plans throughout 2020 mandated that "all staff [are] required to wear an appropriate mask during their shift."[45] SCI Dallas also had a policy requiring social distancing.[46]

---

[42] Doc. 78 ¶¶ 2-3.
[43] Id. ¶¶ 4-5.
[44] Id. ¶¶ 10-11.
[45] Id. ¶ 16.
[46] Id. ¶ 17.

The application and implementation of the foregoing policies is competent evidence that Ransom undertook substantial measures to protect inmates' health and safety and prevent the spread of COVID-19 at SCI Dallas. Cooper's claims, rather than implicating constitutional misconduct by Ransom, primarily focus on the actions (or inaction) of low-level SCI Dallas corrections officers and medical staff. For example, he maintains that, on October 15, 2020, medical staff inappropriately released an infected prisoner to the housing unit instead of quarantining him, that corrections officers were refusing to wear masks unless notified that "ranking officers [were] coming to the cell block,"[47] that employees who were sick were managing to evade the screening process and enter the prison, and that—at times—if a prisoner ran out of disinfectant, some guards would provide more disinfectant upon request and some would not.[48]

The Court is cognizant that review of a conditions-of-confinement claim generally involves a totality-of-the-circumstances approach.[49] Nevertheless, Cooper's claims must first be scrutinized in isolation to determine whether there is competent evidence of deliberate indifference by Ransom with respect to any condition of confinement before such conditions could be aggregated.

---

[47] Doc. 78 ¶ 13; Doc. 83 ¶ 13.
[48] Doc. 83 ¶ 25.
[49] *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *id.* at 362-63 (Brennan, J., concurring); *Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir. 1990) ("[I]n determining whether conditions of confinement violate the Eighth Amendment we must look at the totality of the conditions within the institution.").

As to his first claim regarding the infected inmate "Wally" improperly being released to his housing unit on October 15 but then being recalled to medical later that day, Cooper has not provided any evidence (or even an allegation) establishing how Ransom was involved in this incident. Moreover, Cooper concedes that he "didn't contract covid [sic] from prisoner Wally," was not housed on the same "range/tier" as Wally, and had no "interactions with Mr. Wally."[50] There is no causal connection whatsoever between this "condition" (or deliberate indifference thereto) and Cooper's harm, which renders this claim irrelevant.[51]

As to prison staff coming to work sick, Cooper has proffered evidence of only one event on his cell block where correctional officer "Crawford" came to work visibly sick and several hours later was escorted off the block and out of the prison by ranking officers.[52] Here, Cooper's own allegations and deposition testimony indicate that higher ranking officers—when learning that Crawford was

---

[50] Doc. 83 ¶ 35.
[51] It is well settled that, for Section 1983 liability to obtain, the purported unconstitutional conduct must proximately cause the alleged injury. *See Martinez v. California*, 444 U.S. 277, 285 (1980) (explaining that, for Section 1983 claims, which are "a species of tort liability," alleged constitutional violation must have "proximately caused" plaintiff's injury); *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (applying same analysis to *Bivens* claim); *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) ("It is axiomatic that [a] § 1983 action, like its state tort analogs, employs the principle of proximate causation." (internal quotation marks and citation omitted)) (collecting cases); *see also Bistrian*, 696 F.3d at 367 (stating that third element of failure-to-protect claim is that deliberate indifference must cause prisoner's harm).
[52] *See* Doc. 78 ¶ 6; Doc. 79-1, Sept. 27, 2022 Deposition of Bruce X. Cooper at 28:25-29:20 [hereinafter "Cooper Dep. __:__"]. Although Cooper alleges that other prison staff were similarly removed, he does not support these allegations with competent evidence. *See* Cooper Dep: 31:9-16 (responding, when asked about his knowledge of other incidents of staff removal, "I acquired knowledge from other individuals . . . . I have acquired knowledge due to rumors or, you know, somebody else's information.").

11

sick—took appropriate action and promptly removed him from the prison. There is no conceivable deliberate indifference reflected by any ranking officer, let alone by Ransom.

Next, Cooper claims that low-level correctional officers only wore masks when notified that ranking officers were approaching or present on the block. Once again, however, his allegations and evidence concede that higher ranking officials were acting appropriately by enforcing the DOC and SCI Dallas mask mandates, and that low-level corrections staff understood this and only removed their masks when ranking officers were not present. Cooper testified in his deposition that, on one occasion, he verbally informed Ransom that unspecified corrections officers were flouting the masking rules.[53] According to Cooper, Ransom responded that he would "check into it."[54] Such evidence does not reflect deliberate indifference, as Ransom responded that he would investigate Cooper's complaint. Thus, there is no evidence that Ransom was deliberately indifferent to Cooper's health or safety with respect to low-level corrections officers unmasking when ranking officers were not present.

Cooper's claim involving the lack of social distancing falters for multiple reasons. First and foremost, he has not proffered evidence that this issue was presented to Ransom and Ransom was deliberately indifferent to it. In fact, the

---

[53] Cooper Dep. 27:5-13.
[54] *Id.* at 27:14-17.

12

only record evidence shows that Cooper acknowledged the presence of a social distancing policy at SCI Dallas,[55] presumably promulgated by Ransom. Second, basic allegations like inadequate social distancing in prisons have been found by numerous courts to be insufficient as a matter of law to establish an Eighth Amendment violation.[56] And for good reason, as it is practically impossible to ensure effective social distancing in the inherently constrained prison environment.[57] "Failing to do the 'impossible' doesn't evince indifference, let alone deliberate indifference."[58]

The last condition about which Cooper complained is the lack of disinfectant. But even this claim is equivocal, as Cooper admits that (a) prisoners were given soap and disinfectant, and (b) if they ran out and requested more, some corrections officers would provide additional disinfectant and others would not.[59] Once again, Cooper has failed to provide evidence of deliberate indifference by Ransom to this condition. In his affidavit, Cooper avers that he verbally informed

---

[55] *See* Doc. 78 ¶ 17.
[56] *See e.g.*, *Mincy v. Wetzel*, No. 1:20-CV-717, 2021 WL 5112277, at *1, 5 (M.D. Pa. Nov. 3, 2021) (finding that, among other alleged conditions, lack of masking and social distancing in prison showers did not rise to the level of an Eighth Amendment violation); *Ali v. Kauffman*, No. 1:20-CV-1462, 2021 WL 3929741, at *1, 4 (M.D. Pa. Sept. 2, 2021); *Wilkins v. Wolf*, 1:20-CV-2450, 2021 WL 2376678, at *6 (M.D. Pa. June 10, 2021) (collecting cases); *Bevins v. Kauffman*, No. 1:20-CV-2012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1, 2021) (collecting cases); *Rodriguez-Francisco v. White*, No. 1:20-CV-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020) ("[T]he inability to practice effective social distancing is not, in and of itself, sufficiently serious to implicate a violation of the Eighth Amendment.");
[57] *See Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020).
[58] *Id.* at 1287.
[59] *See* Doc. 78 ¶¶ 25, 27; Doc. 83 ¶¶ 25, 27.

Ransom about the "lack of disinfectant," and that Ransom responded that "it would be taken care of."[60] Such a response does not evince deliberate indifference. Furthermore, Cooper has failed to rebut substantial evidence that SCI Dallas was "disinfected on a daily basis, three times per shift, with a focus on high-touch areas,"[61] and that the facility was audited in September, October, and November of 2020 and found to be compliant with all "entrance screening, masking, and sanitation protocols."[62]

At bottom, Cooper's claims essentially target the conduct of low-level corrections officers or prison staff at SCI Dallas, alleging that they acted with deliberate indifference to the health and safety of inmates. But Cooper did not sue low-level corrections officers or prison staff; he sued the Superintendent of SCI Dallas (among other high-level officials). Cooper, however, has failed to carry his burden at summary judgment because he has failed to adduce evidence showing that Ransom acted with deliberate indifference to Cooper's health or safety. Instead, the undisputed record evidence demonstrates that Ransom acted reasonably and took numerous precautions to protect inmates and slow the spread of COVID-19 at SCI Dallas. Summary judgment, therefore, must be granted in Ransom's favor.

---

[60] Doc. 86-1 ¶ 4.
[61] Doc. 78 ¶ 24.
[62] *Id.* ¶¶ 29-30.

## IV. CONCLUSION

Based on the foregoing, the Court will grant defendant Kevin Ransom's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge